## SUPREME COURT.

### FRANCES NORSWORTHY and others agt. MARY N. BERGH and others.

Under the statute of 1855, (*Sess. Laws of* 1855, *ch.* 327,) in which authority is given to the court to order a sale of real estate or a portion thereof, in order to pay off the assessments and taxes imposed thereon, the only cases in which the court can order such sale, is, where the real estate or any part of it has been sold, or where it shall thereafter be sold, or where it is or shall become liable, in case of default, to be sold to satisfy a tax or assessment.

The statute does not apply to cases where the taxes and assessments have been *paid* and the land discharged therefrom, and it is sought by an application to the court for a sale to *reimburse* the parties who have made such payments.

The *constitutionality* of this act cannot be questioned successfully; besides, the court of appeals have settled that question by an express adjudication, in the case of *Jackson* agt. *Calder*, (*MS., opinion*, 1857,) *per* JOHNSON, *J.*

And the sale which the court is authorized to order, is confined to the real estate within the *city* or *village* where the real estate is, which is assessed, either in whole or in part, and no authority is given to sell any property out of the city or village, which is not assessed.

Where the assessments mostly were made on unimproved property, and as to the productive property, they were for purposes which conferred quite as much benefit on the future estate as on the present life estate, it was ordered that so much o the property as was required therefor be sold, and the proceeds be applied to the payment of the assessments and the costs of suit, with a reference to inquire and report what amount was necessary, &c.

*New-York Special Term, July,* 1858.

THE plaintiffs having life interests in part of the property devised by Samuel Norsworthy, deceased, have brought this action to obtain a judgment directing a portion of such real estate to be sold, in order to pay off and discharge various assessments now laid upon the property, and for which they allege the property will be sold, if not soon redeemed therefrom by payment. They also ask to have a portion of the property sold in order to reimburse the plaintiffs various sums of money which they have heretofore paid for assessments upon the property prior to the commencement of this action.

WAKEMAN & LATTING, *for plaintiffs.*

TOMLINSON & WALDEN, *for infant defendants, H. Humphreys and H. Humphreys, Jr.*

Points for guardian of infant defendant, H. Humphreys.

I. The court has not jurisdiction to compel the sale of real estate. The acts of 1841 and 1855, so far as they authorize a sale, are void. (*Laws of* 1841, *ch.* 341; 1855, *ch.* 327; *Powers* agt. *Bergen,* 2 *Seld.* 358; *Taylor* agt. *Porter,* 4 *Hill,* 140.)

II. If the acts are valid as a constitutional exercise of the power of the legislature, they constitute the only authority of the court, and the court cannot authorize a sale in a case not authorized by the act. (*Rogers* agt. *Dill,* 6 *Hill,* 415.)

The act of 1855 is a substitute for the act of 1841, and repeals it, except so far as it is preserved by special enactment. (*Powers* agt. *Barr,* 24 *Barb. S. C.* 142; *per* BIRDSEYE, *Justice.*)

1st. The act only applies to cases of persons holding equal estates. (*Laws of* 1855, *p.* 537, § 1.)

2d. It is a means by which the assessment may be apportioned among them.

3d. The property to be sold by the judgment of the court must have been either sold, or be liable to be sold, for some assessment imposed.

Therefore the court cannot order either.

1st. The sale of any property not liable to assessment; or

2d. Order a sale of any property to reimburse those who have already paid the assessment.

III. As to, on whom, and what estates the burden should rest.

1. The will devises the real estate to the testator's children for life, with remainder in fee to the grandchildren; the personal estate is given to the children, with the rents of the realty. It is manifest from the will that the testator intended that the rents, &c., of his real estate, with the personal estate, should be applied to the preservation of the estate, and

that the property should go in the manner devised. To carry out that intent, the personal property should be applied to the preservation of the real estate. (*See Hepburn* agt. *Hepburn*, 2 *Bradford's Sur. R.* 74, 76.)

Where an assessment goes to the permanent benefit, it may be right to apportion it between tenant for life and remainder-man, but not to throw all upon the tenant for life. (*Cairns* agt. *Chabert*, 3 *Edw.* 312.)

Points for infant defendant, H. Humphreys, Jr.

I. The will devises the real estate to the testator's children for life, with the fee in reversion to the grandchildren. It is manifest from the whole tenor of the will, from all its provisions, bequests and devises, that the testator intended that his personal estate, or the income of his real estate, should be applied to the preservation of the estate, and save it from destruction. To this end he gives the personal property with the real estate to his children for life. Such being the intention, a sale will not be ordered contrary to it. (*Rogers* agt. *Dill,* 6 *Hill,* 415, *&c., and cases cited.*)

II. Although as a general rule, the reversions must pay the assessments, and the life estate the interest thereon, still where under the will the income is to be applied to protect the estate, it must be first exhausted to pay assessments before a sale can be ordered, and so where real and personal estate are mingled. (*Hepburn* agt. *Hepburn,* 2 *Bradf. R.* 74; *Parkinson* agt. *Parkinson, id.* 77, 79.)

III. This court has no power to order a sale of the estate of an infant, except so far as they are authorized by statute. (*Rogers* agt. *Dill,* 6 *Hill,* 415.)

IV. The acts of 1841, 1842 and 1855, only authorize a sale to pay taxes or assessments, or to redeem the same. If it be sufficient to authorize the court to sell the infant's estate to pay these assessments, it does not authorize a sale to reimburse the life tenants for any payments made by them. Neither will it authorize a sale of any property not liable for the assess-

ment to relieve others. (*Powers* agt. *Barr*, 24 *Barb. S. C. R.* 142.)

The guardian *ad litem*, asks for an allowance, whatever be the decision of the court.

INGRAHAM, Justice. In regard to the latter object of this action, viz., the sale of property to reimburse the plaintiffs for moneys paid by them for assessments heretofore laid upon the property, it is sufficient to say that no authority to order such sale has been conferred by the statute. Before the act of 1841 was passed, no authority existed by which property held by tenants for life and remaindermen, could be sold to apportion the assessments between them. The act of 1841, was intended to remedy what was then an oppressive rule to those holding the life estate, as on unimproved property, the payment of assessments in many instances, would exceed the whole value of the life estate. It was for the purpose of remedying this evil, that the various statutes of 1841, 1842 and 1855, were passed. As the latter one has incorporated in it all the provisions of the other applicable to this question, I shall confine myself to the examination of the provisions of that act.

That act specially enumerates the various cases in which its aid may be invoked, and as it is a statute interfering with the title of individuals to their property, and in fact providing for the sale of it, and the disposition of the proceeds, without their consent, it should not be extended by implication beyond the cases expressly designated therein. The statute in its operation is confined to the following cases. By the first section of the act, (*Session Laws of* 1855, *ch.* 327,) the proceeding is allowed *where the real estate or any part of it has been sold, or where it shall thereafter be sold, or where it is or shall become liable in case of default, to be sold to satisfy a tax or assessment.*

These are the only cases in which authority is given to the court to order a sale of the property. The land upon which the plaintiffs have paid the assessments, is not in this condition, no part of it has been sold for assessments, nor is it liable to be sold to satisfy the same. The assessments have been

paid, the land discharged therefrom, and the plaintiffs, if they have any claim against the defendants, which is by no means clear, can only enforce it by an action against them personally. Different questions present themselves as to the other branch of this case.

It is objected that the act under which this proceeding is taken is unconstitutional, that such a statute alters the disposition of the estate as made by the testator, and that the rights of the infants should be protected against the claim of the tenants for life. The constitutionality of the act can hardly, I think, be questioned successfully. Its provisions are akin to those statutes which allow the interests of infants and others who are incapable of acting for themselves, to be sold to protect those interests. It is not uncommon to order the sale of real estate of infants and other persons, unable to act for themselves, to prevent the sale of such property for taxes or assessments, or where in any case the interest of the party will be advanced thereby. The case of *Taylor* agt. *Porter*, (4 *Hill*, 140,) was referred to upon the argument, as an authority to show that the property of an individual could not be taken for the private purposes of another. But such is not the question in this case. Here the property is subject to an assessment, for which the interest of all the owners in it may be sold. The unimproved property, if sold for the assessment, would be lost to the owners for a term of years, much longer than the life estate. The operation of the statute is to protect all the owners. The sale affects all equally, and the appropriation of the proceeds is to be by an equitable apportionment between the several owners in proportion to their estates therein.

In *Powers* agt. *Bergen*, (2 *Selden*, 358,) Justice JEWETT referring to the act of 1841, says : " This act confers upon the court of chancery all necessary power to adjust contributions to the payment of assessments among the parties interested in the lands on which the assessments are imposed." And in *Jackson* agt. *Calder*, (*MS. opinion*, 1857,) the court of appeals have sustained the constitutionality of this act by an express adjudication. In that case, Justice JOHNSON says, " that such

a provision should be made, is as evident in this case as it is in partition. The tax or assessment is a lien on the land, and under that lien a term for years may be created, so long as completely to cut off the practical enjoyment of any estate in the land for many generations. And again, the power which the legislature exercised in passing this act, is a statutory power when exercised under due restrictions, and its existence cannot be questioned." The question as to the constitutionality of the act, may be considered as disposed of, by this decision of the court of appeals.

There is more difficulty in disposing of the other questions which arise, as to the property which should be sold. The plaintiffs have suggested the sale of unproductive land in the interior of the state, but such property cannot, in my judgment, be ordered to be sold for this purpose. It may be that the interests of all would be promoted by such sale. Undoubtedly the interests of the tenants for life would be, as they would then be realizing interest from what now produces nothing. The statute, however, does not authorize such sale. The authority is given where several persons are interested in *any real estate situate within the bounds of any city or village in this state*, and such real estate or any part of it has been assessed, &c., the court shall have power to order a sale of such real estate, or any part or parts thereof.

The sale is confined to a portion of the real estate within the city or village where the real estate is which is assessed, either in whole or in part, and it confers no authority to sell any property out of the city or village, which is not assessed. The power to sell, in the present case, can only be exercised in regard to property in the city of New-York, where the assessments have been imposed.

It does not, however, follow, that because there are cases where such a sale is proper, that the court in all cases would order a sale, as they are to make an equitable apportionment of the amount among the several owners. Thus for example, an annual tax upon productive property, should not be apportioned in whole or in part to any owner, except the one hold-

ing the life estate.   An assessment for a temporary purpose, could not equitably be charged upon the remainderman; all assessments not benefiting the reversion, should not be charged upon the residuary estate except where the property is unproductive.

In this case, the assessments mostly are on unimproved property, and as to the productive property, they are for purposes which confer quite as much benefit on the future estate as on the present life estate, being for the opening of streets, building of sewers, curb and paving, and similar charges; and the referee has reported that all the improvements for which such assessments were made, were permanently beneficial to the inheritance.

Judgment must be ordered for the plaintiffs, directing so much of the property in the city of New-York as is requisite therefor to be sold, and that the proceeds be applied to the payment of the assessments and the costs of this suit.   That it be referred to Mr. Ruggles, the former referee, to inquire and report what amount is requisite to discharge and pay the assessments and costs; what property it is most for the interests of the several parties should be sold, and in deciding thereon, that he take into consideration what portion of the assessments should be borne by the parties having different interests in the property assessed, so that the parties holding the life estates, shall have their portion of the assessments, and not have them charged entirely on the unproductive property; and all further directions are reserved until the coming in of such report.